***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury by accident.
4. An employer/employee relationship existed between the parties at the time of the alleged injury.
5. The employer in this case is Dominos Pizza, LLC and the claims administrator is Sedgwick CMS.
6. The employee alleges he sustained an injury by accident on March 4, 2009.
7. The employee's claim was denied, with Defendant filing a Form 61 on March 30, 2009.
8. The nature of the alleged injury is a spine/back injury.
 ***********
The following was submitted to the Deputy Commissioner as:
 EXHIBITS
a) Stipulated Exhibit 1: Pre-Trial Agreement
b) Stipulated Exhibit 2: Indexed Set of Paginated Exhibits
c) Plaintiff's Exhibit 1: Photographs
d) Defendant's Exhibit 1: Written Statement of Brad Castner
e) Defendant's Exhibit 2: Written Statement of Lynwood Hathaway
f) Defendant's Exhibit 3: Phone Records.
 *********** *Page 3 
As set forth in the Pre-Trial Agreement and Deputy Commissioner Baddour's January 10, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether Plaintiff suffered a compensable injury by accident at work on March 4, 2009?
2. If so, whether Plaintiff's back condition following March 4, 2009, is causally related to the accident on March 4, 2009?
3. If so, to what compensation, if any, is Plaintiff entitled?
4. Whether Plaintiff or Defendant is entitled to attorney fees?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 46 years old. Plaintiff worked as a food delivery driver for Defendant, at a distribution center for Domino's Pizza. At the time of his alleged injury, Plaintiff had worked for Defendant for fourteen years.
2. Plaintiff's job duties included driving a tractor trailer truck to deliver food and supplies to franchises. Upon arrival at a store, Plaintiff would unload the product, take it into the store, and do merchandising and dating. Plaintiff worked shifts that lasted twenty to twenty-four hours and consisted of him driving approximately four to six hundred miles a day. Plaintiff had a partner on most of these trips. As Plaintiff's job required a lot of lifting, pushing, and pulling, it was common for Plaintiff to experience soreness and have aches and pains after shifts. *Page 4 
3. Prior to March 4, 2009, Plaintiff was never out of work due to back problems.
4. On March 4, 2009, Plaintiff, whose testimony is deemed credible, was delivering products to a store in Kannapolis, North Carolina. It had snowed in Kannapolis a couple of days prior to this date and there was thick ice around the back and front of the store. As Plaintiff was rolling a hand truck of dough trays down the truck ramp, the ramp slid on the ice, and Plaintiff fell, landing on his back. This occurred between 8:00 am and 8:30 am at the side door of the store. Plaintiff was using the side door because he decided that the back door, the door he normally used, had too much ice surrounding it.
5. After Plaintiff fell, he picked the trays up and put them on the truck and locked the store. Plaintiff told Buzz Castner that he had been injured and then called Jimmy Lassiter, his supervisor, to report his injury. Plaintiff was unable to reach him and left a voicemail instead.
6. Brad "Buzz" Castner was driving with Plaintiff as his partner and was sleeping in the truck at the time of the incident. Mr. Castner testified that when Plaintiff came into the truck, he told him that he had slipped on the ice and hurt his back. Mr. Castner testified that there was icy weather that day. Mr. Castner was present and heard Plaintiff call Defendant. Mr. Castner witnessed Plaintiff working through the pain the rest of the day.
7. Jimmie Sanders, the general manager for Defendant, called Plaintiff back around 12:00 noon and said he had received a report that Plaintiff was trying to fake a work injury.
8. Mr. Lynwood Hathaway is a Delivery and Service Team Member for Defendant, which requires him to make deliveries to restaurants. Mr. Hathaway testified that Mr. Castner told him that, on March 3, 2009, he heard Plaintiff comment that he was going to fake a workers' compensation claim so that he could stay out of work until the McDonald's Distribution Center opened and he could go work for them. *Page 5 
9. Mr. Castner testified that Defendant discouraged its workers from filing workers' compensation claims. Mr. Castner testified that he was injured on the job and was expected to continue working, and that Mr. Lassiter once told him not to file a workers' compensation claim and that he could work in the office and use his vacation time to make up for lost runs.
10. Mr. Castner testified that many of his co-workers joked about filing workers' compensation claims as they were continually working through various aches, pains, and injuries. Mr. Castner never heard Plaintiff say in a "non-joking" manner that he was going to file a claim for a workers' compensation injury.
11. Mr. Castner testified that he never heard Plaintiff say that he planned to go out on workers' compensation until the McDonald's Distribution Center opened. Mr. Castner further testified that he never told Mr. Hathaway that Plaintiff planned to stage a workers' compensation injury.
12. The Full Commission finds that Mr. Castner, who no longer works for Defendant, was a credible witness and assigns more weight and credibility to his testimony than that of Mr. Hathaway, who is currently employed by Defendant.
13. On the day of his slip and fall, March 4, 2009, Plaintiff continued to work through 9:00 am of the next day. Plaintiff and Mr. Castner returned home the morning of March 5, 2009.
14. Plaintiff went into the distribution center on March 5, 2009, and informed Jimmy Lassiter, the team leader and his supervisor, that he needed to go to the doctor. Mr. Lassiter responded that "it is on you." Plaintiff interpreted this to mean that he would need to pay for his treatment with his own health insurance.
15. Plaintiff treated with Dr. Jeffrey Breiner, his primary care doctor, on March 5, 2009. Dr. Jeffrey Breiner is a board-certified internal medicine physician that practices at Garner Internal Medicine. *Page 6 
Dr. Breiner's note documents that Plaintiff "comes in after falling at work yesterday, hurting his back." Dr. Breiner diagnosed Plaintiff with low back pain with radiculopathy and took Plaintiff out of work.
16. After Plaintiff informed Defendant that Dr. Breiner had taken him out of work, Defendant instructed him to be examined by Rapid Response Urgent Care in Garner.
17. Plaintiff was examined by Dr. Douglas Keith of Rapid Response Urgent Care on that same day, March 5, 2009. Dr. Keith noted that Plaintiff was walking down a ramp at work and fell in ice onto his back. Dr. Keith noted that Plaintiff's pain was not too bad at first but that it became worse later that night. Dr. Keith noted that Plaintiff was walking stiffly and slowly and that he had pain shooting down to near his left knee. Dr. Keith took Plaintiff out of work and prescribed pain medication.
18. Plaintiff returned to Dr. Keith on March 8, 2008. Dr. Keith diagnosed a lumbar strain and sciatica and ordered an MRI. Dr. Keith took Plaintiff out of work until after he could review the MRI.
19. Plaintiff returned to Dr. Keith on March 18, 2009. Dr. Keith noted that he was no better and that he had lower back pain radiating into his left buttock and left thigh. Dr. Keith continued to keep Plaintiff out of work until an MRI could be obtained.
20. After undergoing an MRI, Plaintiff was referred to Dr. Samuel St. Clair, a neurosurgeon. Plaintiff presented to Dr. St. Clair on March 24, 2009, with left-sided lumbar back pain radiating to the left posterior iliac region and down into the thigh to about knee level. Plaintiff reported occasional episodes of back pain over the years, but that his current episode of back pain began on March 4, 2009, when he was pushing a dolly up an icy ramp and slipped and fell. *Page 7 
21. Dr. St. Clair reviewed an MRI which revealed broad ridging at L4-5 all the way across the canal, but more left-sided. Dr. St. Clair testified that this is a far-lateral disc protrusion that could compress the L4 nerve root, which typically has the pattern of coming down the front of the leg to the knee. Dr. St. Clair testified that the bulging at L3-4 could potentially hit the same nerve because the nerve passes L3-4 in the canal and then goes out laterally at L4-5. Dr. St. Clair testified that there was extra material that could have been a free fragment on the left side where it could press the L4 nerve root.
22. Following his initial visit to Dr. St. Clair, Plaintiff's claim was denied. Plaintiff was unable to see Dr. St. Clair after that visit as they would not accept his private insurance. Dr. St. Clair testified that Plaintiff did not return to him due to an issue with his insurance. Dr. Breiner subsequently referred Plaintiff to Dr. Kenneth Rich, a neurosurgeon, at Capital Neurosurgery.
23. Plaintiff saw Dr. Rich on June 3, 2009. Plaintiff told Dr. Rich that he slipped on ice and fell while working for Domino's Pizza and that he suffered a back injury. Dr. Rich reviewed the previous MRI, which revealed a disc herniation at L4-5 on the left. The MRI also revealed bulging at L4-5 on the right. Dr. Rich testified that he thought it was actually a herniated disc that had broken off from the central core of the disc on the left, and that there was a bulge on the right. He testified that both were significant findings.
24. On July 29, 2009, Dr. Rich performed an L4-5 bilateral hemilaminotomy, medial facetotomy, foraminotomy, and microdiscectomy via paraspinous muscle-splitting approach or a "lumbar laminectomy."
25. Plaintiff returned on August 6, 2009. Dr. Rich testified that Plaintiff's job with Defendant-Employer was discussed at that time and that Plaintiff explained that there was a *Page 8 
significant amount of loading and unloading. Dr. Rich pointed out that the job might be very difficult for Plaintiff as he had undergone back surgery and had some significant wear in the disc in addition to surgery. Dr. Rich suggested that Plaintiff contact a vocational rehabilitation provider to see if they could help with some other return to work avenues.
26. On October 15, 2009, Dr. Breiner noted that Plaintiff remained out of work and clearly would benefit from resuming an occupation that would not involve loading and unloading an 18-wheeler on a daily basis. Dr. Breiner discussed and recommended vocational rehabilitation to explore other alternatives.
27. On October 20, 2009, Dr. Rich again discussed the driving and lifting Plaintiff did at work and expressed concern that his back would no be able to tolerate that type of work. He again suggested vocational rehabilitation. Dr. Rich testified that a new career, or a career that would be friendly to his back, might be necessary. Dr. Rich testified that Plaintiff could not perform the job duties of his pre-injury job.
28. On October 21, 2009, Plaintiff received a letter from Jimmy Lassiter indicating that he was terminated as of that day because he was unable to return to work before the end of his medical leave. The letter also notified him that his medical insurance was also terminated.
29. Dr. Rich treated Plaintiff on December 10, 2009. A repeat MRI was recommended at that time. Dr. Rich again discussed his ability to work as Plaintiff had informed him that Defendant had terminated his employment. Dr. Rich testified that he told Plaintiff that he would never be able to perform the duties of his pre-injury job and that he should contact vocational rehabilitation.
30. On January 7, 2010, Dr. Rich saw Plaintiff after reviewing a repeat MRI. Dr. Rich mentioned pain injections as a possible treatment option and again recommended vocational *Page 9 
rehabilitation. Dr. Rich offered to refer Plaintiff to Carolina Back Institute if he wanted to consider injections.
31. Dr. Mark Reznik is board-certified in physical medicine and rehabilitation and is a pain management physician at Carolina Back Institute. Dr. Reznik first treated Plaintiff on January 28, 2010. Dr. Reznik testified that when he first saw Plaintiff, he was complaining of chronic lower back pain that was radiating down his left lower extremity. Dr. Reznik testified that his understanding of the injury was that Plaintiff's symptoms began suddenly while at work on March 3, 2009, after he slipped on ice and fell while carrying a heavy load.
32. Dr. Reznik testified that it was his impression on January 28, 2010, that Plaintiff likely had pre-existing disc disease, but has some aggravation or worsening of that. He testified that herniations typically are the result of an acute injury rather than a gradual onset.
33. Dr. Reznik further testified that the surgery did not completely relieve Plaintiff's symptoms and that his plan was to treat Plaintiff by non-surgical means to manage those symptoms. Dr. Reznik prescribed Neurontin to treat nerve pain, recommended aquatic therapy, and discussed pain injections.
34. Dr. Rich drafted a letter dated March 1, 2010. Plaintiff remained out of work at that time. Dr. Rich noted that he did not anticipate that Plaintiff would return to his pre-injury work or to a job that required heavy lifting. Dr. Rich encouraged Plaintiff to avoid any repetitive lifting, particularly from below that waist. He encouraged Plaintiff to pursue sedentary work, when feasible and available, such as office work.
35. Dr. Reznik administered pain injections on May 17, 2010, and June 7, 2010. *Page 10 
36. Dr. Reznik testified that if conservative treatment fails to maintain Plaintiff's symptoms at a manageable or tolerable level, he would recommend discussing Plaintiff's condition with Dr. Rich to see if there are any additional surgical treatment options that might be helpful.
37. Dr. Rich testified that Plaintiff is not far away from requiring lumbar fusion surgery. Dr. Rich also testified that "the more physical his work becomes, the quicker he may approach the day when that becomes a real consideration in his life." Dr. Rich has explained to Plaintiff that a fusion will be necessary if no relief is found from conservative treatment.
38. Plaintiff continues to experience lower back pain, numbness in his toes, and tingling in his thighs.
39. Dr. Reznik testified that he did not believe that Plaintiff would be able to return to his pre-injury work as it involved a significant amount of lifting and driving. Dr. Reznik testified that the lifting and driving would impact significantly on a person with chronic back pain, and that despite the surgery, Plaintiff continues to have severe disc disease. He testified that those work activities would certainly impact his chronic pain and cause flare-ups. Dr. Reznik testified that it is unlikely that Plaintiff would be able to continue with that line of work or work that involves that much physical labor.
40. Dr. Reznik testified that Plaintiff might be able to do sedentary work without any kind of lifting. Dr. Reznik testified that sedentary work might be limited to a part-time status to avoid prolonged sitting or being in a fixed position. Dr. Reznik testified that activities including lifting or bending would be minimal to none. He testified that driving would be limited to some extent due to the prolonged sitting and that long drives would probably aggravate his symptoms. Dr. Reznik testified that Plaintiff would not be able to perform any jobs that require any long traveling or prolonged periods of driving. *Page 11 
41. Based upon the evidence of record, the Full Commission finds that Plaintiff is presently temporary totally disabled and requires the assistance of vocational rehabilitation, as recommended by his medical providers, to transition to sedentary employment that he is able to perform given his age, education, and work history.
42. Dr. Reznik, whose expert testimony is deemed credible and whose opinions are accepted as fact, testified to a reasonable degree of medical certainty that Plaintiff's disc herniation and need for surgery was related to the March 4, 2009 work-related slip and fall injury.
43. Dr. Reznik testified to a reasonable degree of medical certainty that any pre-existing back condition or problem that Plaintiff experienced prior to the March 4, 2009 incident was aggravated or exacerbated by the fall on March 4, 2009. Dr. Reznik opined that if Plaintiff had a symptomatic disc herniation prior to his the March 4, 2009 injury, he would have been unable to perform the physical duties of his job.
44. Dr. Breiner, whose expert testimony is deemed credible and whose opinions are accepted as fact, testified that he was aware of the physical nature of Plaintiff's job and that it was his opinion that Plaintiff should not continue his pre-injury position with Defendant.
45. Dr. Breiner testified that he agreed with Dr. Rich's opinions with regard to Plaintiff's ability to perform his pre-injury job and his disability. Dr. Breiner testified to a reasonable degree of certainty that the back problems for which he treated Plaintiff were caused by the work-related injury on March 4, 2009. Dr. Breiner testified to a reasonable degree of medical certainty that any disability or inability to work due to Plaintiff's back condition after March 4, 2009 was caused by the work-related injury. *Page 12 
46. Dr. St. Clair testified to a reasonable degree of medical certainty that the symptoms for which Plaintiff treated with him on March 24, 2009 were causally related to the March 4, 2009 injury.
47. Dr. Rich, whose expert medical opinions are deemed credible and are accepted as fact, testified that he had no reason to doubt the history of the injury provided by Plaintiff. Dr. Rich testified that Plaintiff's symptoms of left leg pain and right-sided leg numbness were related to the March 4, 2009 fall. Dr. Rich testified to a reasonable degree of certainty that, given the history provided to him, the pain and symptoms for which he treated Plaintiff were caused by the fall on March 4, 2009. Dr. Rich further testified that Plaintiff's symptoms related to the March 4, 2009 fall and injury were what made the surgery necessary.
48. Dr. Rich testified that it was his opinion that Plaintiff had back issues that had never been significant prior to the fall, which "became significant because of the fall and after the fall." Dr. Rich testified to a reasonable degree of medical certainty that, according to the history given to him, the March 4, 2009 fall aggravated or exacerbated any pre-existing symptoms or condition.
49. Defendant did not defend this claim without reasonable grounds. Plaintiff did not prosecute this claim without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 13 
1. Plaintiff sustained an injury to his low back as a result of an accident arising out of and in the course of his employment with Defendant on March 4, 2009. N.C. Gen. Stat. § 97-2(6).
2. The medical evidence of record establishes that Plaintiff's low back condition following the March 4, 2009 accident at work resulted from either a new injury or an aggravation of a preexisting condition, and thus this condition is compensable.
3. As a result of the compensable injury, Plaintiff is entitled to temporary total disability compensation from March 5, 2009, and continuing until Plaintiff's return to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendant is entitled to a credit for any gross employer-funded disability plan payments received by Plaintiff for any week he is entitled to total disability compensation under the N.C Workers' Compensation Act. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable low back condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment provided by Dr. Kenneth Rich, Dr. Mark Reznik, and Dr. Jeffrey Breiner.
6. Neither party is entitled to attorney fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below and any credit owed Defendant for employer funded disability plan payments, Defendant shall pay temporary total disability *Page 14 
compensation to Plaintiff from March 5, 2009, and continuing until Plaintiff's return to work or further Order of the Commission. The compensation that has accrued shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable low back condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment provided by Dr. Kenneth Rich, Dr. Mark Reznik, and Dr. Jeffrey Breiner.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel in one lump sum of the accrued amount due Plaintiff, and thereafter by deducting every fourth (4th) compensation check due Plaintiff.
4. Defendant shall pay the costs.
This the 22nd day of July, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ *Page 15 
CHRISTOPHER SCOTT COMMISSIONER *Page 1